Thank you your honor. May it please the court. My name is Lynn Hartfield and I represent the appellant Aubrey Taylor. This case tests the limits of what an expert witness can appropriately testify about. The case law from this circuit is clear that an expert cannot testify on an ultimate issue of law and cannot simply be used as a vehicle to get in the government's closing argument. But that's exactly what happened in this case. At trial the heart of this case was really free will. Mr. Taylor at every stage argued that each of the women who worked for him made a choice of their own free will to work as prostitutes and that they made a choice of their own free will to have him act as their manager. And to that extent that he took on some tasks such as advertising, arranging hotel rooms, providing protection, providing financial management and all he did all of that in exchange for some portion of their earnings. And he never contested that he was guilty of the crime of promotion of prostitution. There was some evidence of course that was put out in the trial that he was guilty of domestic violence. But the core of his defense at trial was that these four women who were named in the indictment at all times were acting of their own free will. And they did not work as prostitutes because they were forced, defrauded or coerced into doing so. Now the government's witness Tarna Darby-McCurtain told the jury there's no such thing as a pimp who does not use force, fraud or coercion. She said all pimps are sex traffickers and then she told the jury that all pimps use force, fraud and coercion to get women to work for them. Counsel is that a legal opinion though? You are arguing in part at least in your briefing that this is a legal issue but it sounds much more like a factual description of a typical relationship between a pimp and a prostitute. Well is there a legal something in there? Yes because a pimp is by definition someone who promotes prostitution and that is a murder case for example and the defendant was contending that he was guilty of second-degree murder and the government puts on an expert who says hey I was a homicide detective for 25 years and I can tell you that if anybody ever picks up a gun and shoots somebody they're doing that with deliberation. That's a legal... Except that well that too is a fact potentially a factual conclusion but it seemed as I understand it what she did was to describe various tactics that pimps typically use in in order to coerce people to work for them and I'm not I still don't understand why that kind of testimony which is what it appears to be would constitute a legal opinion. That's not what she's that's not only what she said she didn't say well in my experience pimps typically will do this or pimps typically will do that. She said pimps or sex traffickers do this and then there was an objection lodged by the defense saying wait a second you're equating two things and then she went on at the government's prompting to say pimps and sex traffickers are the same thing that there is no such thing as a pimp who does not use force, fraud, and coercion and basically equated the two things even though they're separate terms for from a legal standpoint. A pimp is simply somebody who makes money off of promoting prostitution and what Mr. Taylor said he was candid I am a pimp I do make money I manage prostitutes I make money off of them but what Derby McCurtain said is there's no legal distinction between those two things and that's a legal conclusion. Counsel this is Judge Fletcher can you hear me? Yes. My question is a variation on Judge Graber's it sounds as though your honor now I cannot hear you actually it sounds as though that she may be wrong but it doesn't sound to me as though she is giving us a legal conclusion if the problem comes in a way because the word she's using their ordinary English words also are the words that overlap with the legal standard but she needs to use the ordinary English words. Well the difficulty is in cases in which expert witnesses use terms that are not commonly understood if they are using them and defining them that's exactly what's prohibited that is giving an opinion on an ultimate legal issue and in this case yes she was wrong but the problem is that she was she came with a long history of working in this field and she had an impressive resume and she told the jury something that she wasn't qualified to say which was that there's no difference between a pimp and a sex trafficker. That was certainly the government's argument but that was not an appropriate subject on which an expert should testify. The problem was also compounded of course by the fact that there was some confusion over whether she was even qualified as an expert. The government with their drug expert made it very clear that this person was an expert asked to qualify the person as an expert but with Mr. B. McCurtain never said anything of the kind and then there was some confusion about that because of defense questioning and defense closing argument. So that only compounded the problem but the main problem is that this witness took a legal question which is whether excuse me I had to get my microphone wasn't working I apologize for the interruption but the issue here is that this witness took what should have been a legal issue which is was Mr. Taylor guilty of pimping or was he guilty of sex trafficking and she told the jury that there was no legal difference between the two and that anyone who is a pimp is guilty of sex trafficking. That was improper. That colored the entire trial because if the jury were to take this experts opinion as proof then the jury even if they believed that any of these women had not been subjected to forced fraud and coercion and particularly with respect to the victim LC who was a heroin addict who may have made a perfectly reasonable decision that she wanted heroin and she was willing to prostitute and have Mr. Halpers get her heroin she could have made that as a perfectly rational free will decision but had the jury believed Ms. Derby McCurton they would have found that that that Mr. Taylor was guilty anyway because he said he was a pimp. Counsel I have one other question for you about this issue and that is do you agree that we are reviewing for plain error? Not on that issue you'd be on the issue of whether she was an expert however on the issue of whether she gave an improper legal conclusion there were a series of objections so that would not be for plain error. The other issue I wanted to touch on was the the cell phone suppression issue. Now many many many courts have held that a seizure that become unreasonable if there is too long a delay between the seizure and the search of the item. Counsel even if we assume that the delay was unreasonable it was quite unusually long but let's just let's assume with you that it was a violation why isn't any error harmless beyond a reasonable doubt because for example the text messages were found on the other phones as well so what is the marginal relevance or additional evidence that would that came from the phone that in your view could make any difference in the trial? Well it was mostly relevant to the minor HS and the reason is that one of the text messages that was on the phone which the government referred to over and over and over again was a text message from Mr. Taylor to his brother Carl. They did not have Carl's phone they only have Mr. Taylor's phone and it said I'm taking a 20-year chance for you bro something something along those lines which was used as evidence that he knew that HS was a minor that he knew that he was going to get punished more if he found out that HS was working for him. Other than that there was very conflicting testimony about HS's age and what she told people and what evidence they had of her age. Certainly even their cooperating witness who was under immunity said now I you know everybody was convinced this girl was 18 years old. So that was that was quite damning evidence particularly given how in how much inconsistent testimony HS had given as demonstrated by her own text messages testimony for the grand jury. The other thing that was on it was a lot of photos of Mr. Taylor in the hotel room of Menachi with stacks of cash and that again was relevant to showing that he was actually involved in prostituting HS which was there was some conflicting testimony on that as well. The cash is consistent with his being a pimp correct? It is but he did maintain with respect to HS that he wasn't involved with her. The pictures with him and the cash are they connected with HS? Yes. Do we know that connection for sure? Yes it was because of the metadata in the photos came from that motel where she was. That's the only hotel where HS was? She's the only prostitute who was with HS yes. So in other words the fact that it was in that hotel doesn't necessarily tie it to HS? It does it to the extent that AM was much more independent than the other prostitutes. She was she was considered the bottom as in the parlance of prostitution so that it would have been entirely possible for prostitute her without any involvement with Taylor. So the pictures of him with the money definitely made it look like he was also involved in profiting from that. His contention had been that it was his brother who was profiting from HS not him. Both of those those items the text message to his brother, the photos with the money, distinct pieces of evidence that were harmful to the case. Did you wish to save some rebuttal time? Yes I do wish to save the remaining time for rebuttal. Thank you. You may do that. We'll hear next from the government. Afternoon, Charlene Coskey for the United States. Could you move closer to your Yes. I'm Charlene Coskey for the United States. I'll begin with the issue of the expert testimony and first I'll just note that talent focuses on the experts use of the words force, fraud, and coercion. I'll just point out that the only time she used those words was on cross-examination and that testimony was elicited by the defense. During her direct examination she didn't she didn't refer to force, fraud, and coercion. You need to you need to speak more loudly please. Is this better? Can you hear me now? Yeah. So the words force, fraud, and coercion were only elicited on cross-examination and not on direct examination. So Agent Jervie McCurtain did not testify about those words. She did not use those words in her direct examination. They were elicited by defense counsel. And she also did not say that all pimps are sex traffickers. What she explained is that in her professional experience and in her work as an investigator of sex trafficking crimes and sex trafficking crimes of minors, the pimps that she worked with were those who would qualify as sex traffickers and asked if all pimps were sex traffickers. She did not say that they were. She said successful pimps are but then she went on to explain that there are also pimps who are not successful called buster pimps or popcorn pimps and and that sex traffickers are a subcategory of all pimps. So Mr. Kaler was free to argue that he was not a successful pimp. Being a pimp is not a legal defense to a charge under 1591. So there's really nothing improper about her use of of those terms. It was also clear from her testimony and from the introduction every time she was asked a question, it was clear that she was testifying based on her expert opinion. And as far as the government of the allegation that the court did not properly qualify the expert, this court has held in the U. S. which was cited in our brief that where defense counsel has ample opportunity to cross examine the witness and contest your liability, even if they're that's that's sufficient to satisfy the gatekeeping obligation of the district court. I would also just clarify that defense counsel did not argue that all that he did not use that he did not use force, fraud and coercion against all four. That was not his claim with H. S. H. S. His defense actually was that he really wasn't involved. He knew nothing about it, and he didn't know that she was a juvenile. He blamed all of that on A. N. and his brother, Carl, and said he wasn't involved. So he didn't actually argue with regard to H. S. That he did not use. If there are no other questions on the expert testimony, I'll move on to the seizure of the S. Five phone. Yes. And I'd like you to assume, uh, that the, uh, that the delay was unreasonable and answer the question whether there is or is not harmless error in particular in the in the manner that, uh, opposing counsel discussed. So the reason that, of course, I do maintain that it was it was But even if this court disagrees, it was harmless. This is just a sample of some of the testimony that came in on the question of whether he had regularly disregarded H. S. S. H. And I'll also point out that this is only relevant to the first charge of this conspiracy charge because the jury did find that he used force, fraud and coercion against H. S. That's deficient to uphold count to. So this whole argument is really only relevant to count one, um, involving the conspiracy of sex trafficking against H. S. And the evidence included, um, D. K. Testified that Taylor told her that his brother had run across a girl downtown and had sex with her and didn't know what to do with her. So called Taylor and that Taylor and C note met with the girl and Taylor told D. K. But the girl had looked young and he had asked, you know, whether she had an I. D. And C. Note had told Taylor that she did not. Taylor had then said he wanted nothing to do with her. So he called A. M. A. M. Testified that she and Taylor asked H. S. For I. D. And she didn't have it. I am also testified that Taylor was hesitant to take H. S. Wenatchee because he suspected she was a minor. The testimony and police records established that Taylor was in Wenatchee the weekend of October 23rd, which is when H. S. Was there and saw Taylor give H. S. S. Names to C. Note and testified that when planning the second trip, Taylor told A. M. He did not want her to take H. S. Because he was concerned about her age, but he eventually allowed her to go anyway. And that was A. M. On the night of H. S. Is arrest and said that Taylor said he'd been worried about H. S. Is age and blamed her for taking H. S. On the trip. It just testified that she told Taylor and A. M. That she was underage and informed them that she had a runaway warrant. H. S. Also testified that she heard Taylor and A. M. Discussing her age and they need to use someone else's photograph for online apps. They did use someone else's photographs for online ads, and Taylor told her, and she also testified that Taylor told her to hide in the car when we showed up, and H. S. Testified that he told her that because he knew about the warrant and her age. It just also testified that A. M. Used fake photos because H. S. Was underage. Defense counsel or appellate counsel mentions, um, you know that this was relevant to credibility of the issue of the witnesses. And I will just say that many of these points were corroborated by the different witnesses and other testimonies, such as photographs and records. If there are no other questions on the issue of the S. Y. Phone, I would also just note that some did have independent evidence hearing value because it did help establish that Taylor actually sent the messages that came from phone. So even if Mr Taylor have requested the phone, the government would not have provided it to him, and he did not request his phone, nor did he object, um, to use of the phone at on any grounds, let alone grounds of problems. If there are no other other questions on the S. Y. Phone, we ask that you affirm again. Thank you, Counsel. And I believe Miss Hartfield, there's some rebuttal time remaining to you. Thank you, Your Honor. I just want to address a couple of points. I think we're splitting hairs here with the expert witness by saying she didn't say that all pimps use force, fraud, and coercion. I mean, she basically said anyone, but the most beginner, unsuccessful, braggart pimp uses force, fraud, and coercion and is a sex trafficker. There's certainly, Mr. Taylor would probably be offended if anybody were to say that he was not a successful pimp, that was his identity. So, you know, the question of her, whether she said all pimps or all pimps, except for one or two, is, I think, not material to the argument. It was clear that she meant that pimps use force, fraud, and coercion and are sex traffickers, and there's no difference. However, legally, there is. Obviously, if you look at Washington statutes, there are different categories, and one of them is a person who promotes prostitution that is punished at a much lower rate than being a sex trafficker. There's also a federal crime, of course, of promoting prostitution as long as there's an interstate element. So, they are two different offenses, and it was improper for an expert witness to equate those because that's a legal question. Secondly, with regard to whether the testimony was, excuse me, whether the testimony from Mr. Taylor's phone was harmful or not, many of the things that the government cites really don't answer that question. The testimony from DK, with him admitting things after the fact, are very different than what he knew at the time that HS went up to Wenatchee. Certainly, he found out when she was arrested that she was underage. He heard all about that because he was at a he said after that would have been self-serving to try to say, hey, I didn't know she was 17, or I thought she was 17, or I thought she was 17, and that's why I didn't want to have anything to do with her, whatever. But the relevant universe of time is at the time that he agreed to send her to Wenatchee with AM and have her prostitute. The second thing is that the photographs for the online ads, I would just note that this HS was 17, over 17, and there's no reason that a photograph of her would show that she was underage versus not underage. There may have been any other reasons why they used other people's photographs, but it doesn't make logical sense that they would have done that because she looked somehow underage when she was only a few months away from turning 18. And I only point that out just because there really wasn't that much evidence that Taylor knew that she was underage. And certainly, the evidence from HS was conflicting, and she was not a credible witness. AM, of course, always maintained that nobody knew that she was under 18. So the evidence on age was actually not overwhelming. Other than that, I think the one thing I'd like to correct from my own brief is that I stated that Derby McCurtain's testimony, if the court agrees with me on that, it would result in a necessity of overturning not just counts three, four, and five, but also count two because that did also go to forced brought in coercion. And even if Taylor did not use forced brought in coercion himself, he would still be guilty if somebody else used forced brought in coercion to get HS to prostitute. And there was some testimony that his brother used forced brought in coercion or force. So I, as I said, I said it would require reversal only if counts three, four, and five. And I would like to correct that because it would be counts two, three, four, and five. Thank you, counsel. The case just argued is submitted. And once again, we appreciate helpful arguments from both of you. Thank you.
judges: Graber, W. Fletcher, Freudenthal